**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUWAKKIL Al-HIZBULLAHI, a.k.a. TIM TYSON, | No. C 04-4903 MMC (PR) |
| Plaintiff, | **ORDER OF PARTIAL DISMISSAL; DENYING MOTION TO AMEND** |
| v. | |
| R.G. BLEISNER, et al., | (Docket No. 9) |
| Defendants. | |

On November 11, 2004, plaintiff, an inmate at Pelican Bay State Prison ("PBSP") and proceeding pro se, filed the above-titled civil rights action pursuant to 42 U.S.C. § 1983 against more than twenty named defendants,[1] raising seven claims arising from various conditions of his confinement. He has paid the filing fee.

**DISCUSSION**

I.  Motion to Amend

On April 28, 2005, plaintiff filed a motion to amend the complaint, by which motion plaintiff indicated his intent to add to the original complaint a new claim against two existing

---

[1]The defendants named in the caption of the case do not match precisely the defendants named in the body of the complaint. As set forth infra, plaintiff is directed to list in the caption the names of all defendants to the action and to list at the beginning of each separate claim the names of the specific defendants against whom that particular claim is alleged.

defendants and two previously unnamed defendants, for refusing to acknowledge plaintiff's legal name; the proposed new claim was set forth in the motion. In an order filed November 14, 2005, the Court granted plaintiff leave to file an amended complaint. In that order, the Court cautioned plaintiff as follows:

> An amended complaint supersedes the initial complaint and may not incorporate by reference any parts of the original complaint. London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981). Defendants not named in an amended complaint are no longer defendants. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir.1992). These rules govern actions filed by pro se litigants as well as litigants represented by counsel. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (finding original complaint that was not incorporated into pro se litigants' unsolicited amended complaint was properly ignored).
> Accordingly, if plaintiff wishes to amend his complaint to include new claims and new defendants, he must file an amended complaint, which amended complaint also must include any claims from the original complaint he wishes to preserve.
> . . .
> **If plaintiff fails to timely file an amended complaint in conformity with this order, this action will proceed on the basis of plaintiff's original complaint only.**

(See Order Granting Leave to Amend, filed November 14, 2005 (emphasis in original).)

Plaintiff thereafter failed to file an amended complaint. Instead, on January 6, 2006, plaintiff filed a document titled "Motion: Amended Complaint," in which plaintiff purports to plead the one new claim essentially as an amendment to his original complaint. This document fails to comply with the Court's order of November 14, 2005, which order expressly and clearly informed plaintiff that he may not add a new claim to his complaint in such manner. Rather, as plaintiff was instructed, he must file an amended complaint and include therein all the claims from the original complaint he wishes to preserve, as well as the new claim he wishes to add.

Accordingly, plaintiff's "motion" to amend the complaint by filing a single eighth claim as an amendment to his original complaint will be DENIED.

As set forth below, however, the Court, in reviewing plaintiff's initial complaint, will be affording plaintiff leave to amend two of his seven original claims. Because plaintiff will have an opportunity to file an amended complaint for that purpose, the Court will grant plaintiff leave to include his proposed eighth claim in such amended complaint. If plaintiff

2

1 does not include that claim in an amended complaint in compliance with the instructions set
2 forth below, he will not have another opportunity to pursue said claim in this action.

II.     28 U.S.C. § 1915A Review

   A.     Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings, however, must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

   B.     Plaintiff's Claims

      1.     Rules Violation Report Re. Conspiracy to Assault Prison Staff

In his first claim, plaintiff makes the following allegations:

Following an assault on a PBSP official on June 21, 2003 by an inmate attending Islamic services, members of the PBSP Institutional Gang Investigations unit ("IGI") and Security Squad ("Security") investigated a possible inmate conspiracy to assault or murder PBSP staff. The IGI and Security units placed in Administrative Segregation all known Muslims and "associates of the Islamic community" housed in PBSP's "A" and "B" facilities. Pursuant to this investigation, on July 14, 2003, defendant M. Randolph placed plaintiff on "confined to quarters" status. On July 21, 2003, defendant J. Guinn placed plaintiff in Administrative Segregation without any documentation showing plaintiff was part of the conspiracy under investigation. In so doing, Guinn made an erroneous statement that plaintiff was a "crip" and has a history of "staff threats/ battery." The next day, defendant

3

L.M. Williams conducted a hearing on plaintiff's placement in Administrative Segregation. At the hearing, and again on July 30, 2003 at an Institutional Classification Committee ("ICC") hearing before S. Heaps[2] and defendants Williams and R. Kirkland,[3] plaintiff requested a copy the evidence relied upon to place him in Administrative Segregation. The requests were denied because the investigation was ongoing. On August 25, 2003, plaintiff received a disclosure form with the dates of five different confidential memoranda that allegedly implicated plaintiff in the conspiracy.

On October 4, 2003, defendant D. Loeffelholz issued plaintiff a Rules Violation Report ("RVR") charging plaintiff with conspiracy to murder and/or assault correctional staff in the "A" facility, specifically, the Protestant chaplain, defendant R.G. Bleisner. The proof cited in the RVR included an administrative appeal plaintiff filed against Bleisner, as well as a July 11, 2003 "chrono" written by Bleisner stating plaintiff had requested Islamic materials, and confidential memoranda stating plaintiff planned to assault Bleisner. Loeffelholz further alleged that plaintiff had previously participated in riots and threatened violence against public officials, and that plaintiff supported a conspiracy to assault the "Southern Hispanics" in the prison in order to create a "diversion to assault" Bleisner. Defendant R.S. Marquez wrote a report relied upon by Loeffelhoz in issuing the above RVR, incorrectly stating plaintiff was a "crip" and part of the conspiracy to assault and/or murder correctional staff. On November 10, 2003, defendant F.C. Vanderhooeven conducted a hearing on the RVR and found plaintiff guilty of the charged conspiracy, based on erroneous information and without identifying plaintiff's co-conspirators or specifying any overt acts committed by plaintiff. Defendant Joe McGrath, PBSP Warden, "refused to intervene" in the "round up" of Muslim inmates and their associates during the conspiracy investigation, or to ensure that "plaintiff was able to file a formal administrative appeal against Lt. J. Guinn."

---

[2]This individual is not named as a defendant in the complaint.

[3]Plaintiff also requested this documentation unsuccessfully in administrative appeals to defendants Kirkland, Lethel Polk, and R. Bradbury, along with B. Samples and J.S. Arcer, who are not named as defendants in the complaint.

4

Plaintiff seeks to have the RVR reversed from guilty to not guilty and $10,000 in punitive damages awarded against each defendant, but does not identify any constitutional right or other provision of federal law violated by defendants in connection with the RVR.

An inmate's placement in segregation as a result of discipline may implicate a liberty interest protected by due process provided that he suffered a deprivation of "real substance." See Sandin v. Conner, 515 U.S. 472, 484-87 (1995) (finding inmate's thirty-day placement in disciplinary segregation, where conditions mirrored conditions imposed upon inmates in administrative segregation and protective custody, did not result in type of atypical, significant deprivation for which state might create liberty interest, nor did such placement present case where state's action would inevitably affect duration of sentence); Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (holding placement in segregated housing in and of itself ordinarily does not implicate protected liberty interest); Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995) (finding no liberty interest under Sandin where inmate placed in disciplinary segregation for 14 days); but see Wilkinson v. Austin, 125 S. Ct. 2384, 2394-95 ( 2005) (finding indefinite placement in Ohio's "supermax" facility, where inmates not eligible for parole consideration, imposes "atypical and significant hardship within the correctional context").

Here, plaintiff fails to make clear in his complaint either the length of his placement in administrative segregation or the conditions of that placement. In the absence of such allegations, plaintiff fails to set forth a deprivation of "real substance" within the meaning of Sandin, such as to implicate a constitutionally protected liberty interest. Plaintiff will be afforded leave to amend this claim to allege, provided he can do so in good faith, facts demonstrating a cognizable deprivation.

2.   Indeterminate SHU Term

In his second claim, plaintiff makes the following allegations:

He appeared before the ICC on February 4, 2004, regarding his placement in the

5

Secured Housing Unit ("SHU").[4]  At that time, plaintiff had 60 days remaining on his SHU term.  Defendants Kirkland, G. Griffith, and S. Wheeler recommended that plaintiff be retained in the SHU indefinitely based on a policy created by defendant W. A. Duncan that inmates who have had three determinate SHU terms should be considered for an indeterminate SHU term.  B. Powell[5] approved an indeterminate SHU term for plaintiff on February 18, 2004.  Plaintiff filed administrative appeals regarding this decision, which appeals were denied by T. Surges[6] and defendant Kirkland.  Warden McGrath has "refused to stop" the practice of placing inmates on indeterminate SHU terms.  On August 24, 2004, defendant Williams participated in plaintiff's "180-day review" and refused to release plaintiff from the SHU.

Plaintiff, alleges there is no state regulation permitting placement of inmates in the SHU for an indeterminate period of time.  Plaintiff further alleges such practice violates the "U.S. Constitution."  Again, plaintiff fails to identify any particular provision of the Constitution or other federal law assertedly violated by his indeterminate placement in the SHU.  Liberally construed, however, the allegation that plaintiff has been placed in the SHU indefinitely states a cognizable claim for the violation of a liberty interest protected by due process.  See Wilkinson v. Austin, 125 S. Ct. at 2394-95 (finding indefinite placement in Ohio's "supermax" facility, where inmates not eligible for parole consideration, imposes "atypical and significant hardship within the correctional context").

### 3. Appeals Coordinator

In his third claim, plaintiff contends defendant M.J. Nimrod, the PBSP appeals coordinator, "is constantly frustrating the appeals process, hindering the appeal process and rendering it non-effective, constantly makes unnecessary and /or erroneous comments and misclassify the 602s."  Specifically, plaintiff alleges Nimrod rejected "two appeals in

---

[4]Plaintiff does not indicate whether his placement in the SHU at such time was based on the RVR discussed in claim one.

[5]This individual is not named as a defendant in the complaint.

[6]This individual is not named as a defendant in the complaint.

contravention to C.D.C. policy." Plaintiff further alleges he filed two administrative grievances against Nimrod that were denied at all levels of review.

Neither the alleged failure to properly process administrative grievances nor the allegedly improper denial of such grievances suffices to state a cognizable claim under 42 U.S.C. § 1983, because there is no constitutional right to a prison administrative appeal or grievance system. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). Accordingly, plaintiff's allegation that Nimrod improperly processed and denied his administrative appeals does not state a cognizable claim for relief.

Plaintiff also alleges, however, that "when M.J. Nimrod refuses to process a 602 he stops plaintiff from formally exhausting his administrative remedies and thus denies plaintiff access to the courts; when M.J. Nimrod delays and frustrates the appeals process he stops plaintiff from filing a timely and speedy petition, tort claim or 1983 civil action." Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977). To establish a claim for a violation of the right of access to the courts, a prisoner must prove there was an inadequacy in the prison's legal access program that caused him an actual injury. See Lewis, 518 U.S. at 350-55. To prove an actual injury, the prisoner must show the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. See id. at 354-55. Once the prisoner establishes a denial of access to the courts, the court determines whether the hindrance of such access was reasonably related to legitimate penological interests. See id. at 361 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Consequently, in order to state a cognizable claim against Nimrod for denying him access to the courts, plaintiff must allege that Nimrod's asserted "delay" or "frustration" of his grievances has prevented him from pursuing non-frivolous claims in the courts. Plaintiff will be granted leave to amend this claim to identify the specific administrative appeals Nimrod has delayed or frustrated, and, provided he can do so in good faith, to identify the

7

non-frivolous claims Nimrod has prevented plaintiff from filing in the courts.

    4.         Outdoor Exercise

In his fourth claim, plaintiff alleges he was placed on "confined to quarters" status on July 14, 2003, and then transferred to administrative segregation, where he remained until February 2, 3003. He claims that while in administrative segregation he "is suppose[d] to receive at least ten hours of yard per week." According to plaintiff, on July 27, 2003, he filed an administrative grievance stating that he had only been allowed outdoor exercise "once between 3-10 days from anywhere between one to two and a half (2 ½) hours each yard day." This allegation is unclear as to precisely how little outdoor exercise he received, and for what period of time. The Director's Level decision denying his grievance on this issue, which is attached to the complaint, describes plaintiff's claim as alleging he received less than ten hours of exercise per week. This attachment fails to clarify, however, how much less, or for what period of time he received such lesser amount. Plaintiff also asserts that prison regulations, state law and federal law require inmates to receive at least one hour of yard per day, and that prison regulations also require at least ten hours of exercise per week. As discussed above, a § 1983 claim may only rest upon the violation of federal law, not state law or state regulations. The Eighth Amendment does require prison officials to allow outdoor exercise time for inmates, such as plaintiff, in long-term segregation. see Keenan v. Hall, 83 F.3d 1083, 1089-90 (9th Cir. 1996). The relevant case authority does not provide a bright-line rule as to how much exercise is required, however. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc) (finding denial of outdoor exercise for 6-1/2 weeks meets objective prong of Eighth Amendment deliberate indifference claim); Keenan, 83 F.3d at 1089-90 (finding denial of outdoor exercise for six months while in segregation sufficient for purposes of plaintiff's proceeding to trial); Allen v. Sakai, 48 F.3d 1082, 1087-88 (9th Cir. 1994) (finding allegation of six-week's deprivation of outdoor exercise for prisoners in indefinite segregation sufficient to state 8th Amendment claim).

To the extent plaintiff's complaint is simply that he received less than one hour of outdoor exercise per day, or less than ten hours per week, for the two weeks between July 14

and July 27, 2003, such allegation, under the above authority, does not plead a deprivation sufficiently substantial to implicate the Eighth Amendment. Because it is unclear precisely how little outdoor exercise plaintiff is alleging he received, however, the Court will afford him leave to amend this claim in order to include, if he can do so in good faith, an allegation as to precisely how little outdoor exercise he received, and for what period of time.

                5.      <u>June 16, 2003 Chrono and Rules Violation Report</u>

In his fifth claim, plaintiff makes the following allegations:

On November 9, 2002, plaintiff and another inmate were involved in an altercation in which plaintiff sustained a lacerated ear. On November 12, 2002, defendant D.A. Webster brought plaintiff a prison form known as a "chrono," which stated the injury was not caused by a staff member, but rather by the other inmate. Plaintiff signed the chrono without reading it "fully." When he read it later, however, he discovered it was "false," in that his injury was not caused by the other inmate, but rather by a PBSP official, defendant J. Harlan and, specifically, by Harlan's use of a "billy club" during the altercation.[7] On November 20, 2002, plaintiff filed an administrative grievance, requesting that the chrono be withdrawn. The grievance initially was denied by defendants Williams and Polk, and ultimately denied at the Director's Level of review on April 29, 2003.[8] On June 7, 2003 plaintiff submitted an amended administrative grievance regarding the chrono, which grievance was "cancelled" as untimely by defendant Nimrod. On June 16, 2003, defendant Julian Case issued an RVR against plaintiff for making "false allegations against a staff member" in his June 7, 2003 grievance; plaintiff subsequently was found guilty of the charge by defendants Williams, Polk, and R. Brune. Plaintiff's administrative appeals of this finding were denied at all levels of review, including by defendant Kirkland at the second level.

In this claim, plaintiff seeks to have the June 16, 2003 RVR "reversed," and the allegedly false chrono "removed/deleted" from plaintiff's records. Although plaintiff again

---

[7] Plaintiff does not allege Harlan's use of the club amounted to "excessive force."

[8] Plaintiff does not name this last individual as a defendant.

9

fails to identify any violation of federal law, the Court, as with plaintiff's first claim, liberally construes the claim as alleging the discipline plaintiff received violated a liberty interest protected by due process as set forth in Sandin.

### 6. Property

In his sixth claim, plaintiff makes the following allegations:

On April 29, 2004, he received some of the personal property that had been confiscated when he was placed in the SHU. Some food items and certain transcripts and "case law" were not returned to him, however, and, on May 2, 2004, he filed an administrative grievance seeking the return of these items as well. Plaintiff pursued this grievance through all levels of review. On July 12, 2004, at the second level of review, the appeal was partially granted, and the food items were returned to him. The transcripts and case law, however, were not returned; plaintiff continued to pursue his grievance seeking the return of these items through the Director's Level, where it was denied on October 21, 2004. On July 29, 2004, plaintiff filed another grievance, seeking to have prison officials retain the transcripts and case law while plaintiff appealed his placement in the SHU. On August 2, 2004, defendant R. Korsmeyer denied this grievance at the first, informal level and sent plaintiff's property to plaintiff's home. According to plaintiff, prison officials are "suppose[d] to" hold confiscated property until "at least the Second Level Review," and that defendant Korsmeyer violated "C.D.C. policy" in sending plaintiff's property home before he could appeal Korsmeyer's decision to the Second Level of review.

As discussed above, only the violation of federal law, and not the violation of prison rules, may form the basis of a § 1983 claim. The federal right to due process ordinarily requires notice and an opportunity for some kind of hearing prior to the deprivation of a significant property interest. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978). Neither the negligent nor intentional deprivation of property states a due process claim under § 1983, however, if the deprivation was random and unauthorized. See Parratt v. Taylor, 451 U.S. 527, 535-44 (1981) (finding no claim where state employee negligently lost prisoner's hobby kit), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327,

330-31 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (finding no claim based on intentional destruction of inmate's property). The availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient procedural due process. See Zinermon v. Burch, 494 U.S. 113, 128 (1990); King v. Massarweh, 782 F.2d 825, 826 (9th Cir. 1986). California law provides such adequate post-deprivation remedy. See Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

Here, as noted, plaintiff's only claim is that Korsmeyer improperly sent plaintiff's property to his home prior to the second-level review of Korsmeyer's decision. Plaintiff makes no claim that the original deprivation of his property was improper, that it violated his right to due process, or that he did not receive the procedures required by due process when the property was taken from him at that time. Because, as alleged, Korsmeyer's sending plaintiff's property home was not authorized by prison rules, such action does not implicate plaintiff's right to due process. Although plaintiff may bring a tort claim in state court with respect to the personal property Korsmeyer sent to plaintiff's home, such claim does not state a cognizable basis for relief under federal law.

### 7. Receiving Mail in Swahili

In plaintiff's seventh claim, plaintiff alleges defendant Warden McGrath wrote a memorandum banning four languages in the prison. Pursuant to this memorandum, plaintiff alleges, PBSP officials have not allowed him to receive mail containing the "Swahili language." Liberally construed, this allegation states a cognizable claim for the violation of plaintiff's First Amendment rights. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (holding prisoners enjoy First Amendment right to send and receive mail); see also Turner v. Safley, 482 U.S. 78, 89 (1987) (providing prison may adopt regulations or practices that impinge on prisoner's First Amendment rights, provided regulations "reasonably related to legitimate penological interests"); Ortiz v. Fort Dodge Correctional Facility, 368 F.3d 1024, 1026-27 (8th Cir. 2004) (finding "English only" rule precluding inmates' receiving mail in foreign language permissible where officials demonstrated rule reasonably related to

legitimate penological needs).

**CONCLUSION**

In light of the foregoing, the Court hereby orders as follows:

1. The motion to amend is DENIED.

2. The second, fifth and seventh claims in the complaint, as alleged, state a cognizable claim for relief. The first, third and fourth claims are DISMISSED with leave to amend. The sixth claim is DISMISSED for failure to state a cognizable claim for relief.[9]

3. Within **thirty (30) days** of the date this order is filed, plaintiff may file an AMENDED COMPLAINT, **using the court's form civil rights complaint**, in order to cure the deficiencies in the third and fourth claims of his complaint, and to include the "eighth claim" set forth in the plaintiff's motion to amend. Plaintiff shall complete the form, and include in the caption both the case number of this action (No. C 04-4903 MMC (PR)), and the phrase "AMENDED COMPLAINT."

**If plaintiff fails to timely file an amended complaint in conformity with this order, this action will proceed only on the basis of the first, second and fifth claims in the complaint.**

Additionally, because of the large number of defendants, plaintiff shall include the names of all defendants in the caption of such Amended Complaint and shall list at the beginning of each claim the names of the individual defendants against whom that particular claim is alleged.[10]

4. It is plaintiffs' responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action, pursuant to

---

[9] There is no indication that this claim could be cured by amendment, because plaintiff's allegations establish the absence of a constitutional violation. See Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

[10] The caption includes a defendant named "M.L. Miller." Plaintiff's complaint, however, contains no allegations concerning such defendant. Consequently, such defendant is hereby DISMISSED from the action.

12

Federal Rule of Civil Procedure 41(b), for failure to prosecute.

This order terminates Docket No. 9.

IT IS SO ORDERED.

DATED: September 29, 2006

_____
MAXINE M. CHESNEY
United States District Judge