United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUWAKKIL AL-HIZBULLAHI, a.k.a. TIM TYSON,<br><br>  Plaintiff,<br><br>  v.<br><br>R.G. BLEISNER, et al.,<br><br>  Defendants.<br>_____ | No. C 04-4903 MMC (PR)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION; DENYING DEFENDANT'S MOTION TO STAY DISCOVERY; DENYING PLAINTIFF'S DISCOVERY-RELATED MOTIONS; SETTING DISCOVERY AND BRIEFING SCHEDULE**<br><br>**(Docket Nos. 64, 67, 72)** |

More than five years ago, on November 11, 2004, plaintiff, a California prisoner currently incarcerated at Represa State Prison and proceeding pro se, filed the above-titled civil rights action pursuant to 42 U.S.C. § 1983. After numerous proceedings dedicated to resolving the matter of service of the second amended complaint ("SAC"), the Court, by order filed October 2, 2009, dismissed from the action all unserved defendants. Thereafter, the Court granted plaintiff leave to file a motion for reconsideration of that ruling, and directed defendants' counsel to respond to the motion. The Court also directed defendant J. Woodford ("Woodford"), the only defendant who had returned a waiver of service, to file a dispositive motion.

Now pending before the Court are the motion for reconsideration, Woodford's motion to stay discovery, and plaintiff's discovery-related motions.

A.  Motion for Reconsideration

The issue of service has been of primary focus in the instant action and a lengthy record has developed with respect thereto. The Court summarizes below the background relevant to plaintiff's motion for reconsideration of its ruling as to service.

1.  Background

More than two years ago the Court, by order filed April 23, 2008, reviewed the allegations in the SAC and ordered plaintiff, who is not proceeding in forma pauperis and has paid the filing fee, to provide, within thirty days, proof that he had served the more than forty defendants against whom cognizable claims for relief had been found, or to show cause why such defendants should not be dismissed from this action without prejudice. After having been granted several extensions of time to perfect service, plaintiff, on January 21, 2009, filed a motion by which he sought an order finding each defendant had been properly served, or, alternatively, entry of judgment in favor of plaintiff, on the ground defendants and their attorney, Deputy Attorney General Michael Quinn ("Quinn"), were evading service. Specifically, plaintiff claimed he sent to the named defendants and their attorney Quinn waiver-of-service forms in accordance with Rule 4(d) of the Federal Rules of Civil Procedure, and that such defendants had improperly refused to waive service. Quinn, specially appearing on behalf of defendants, opposed plaintiff's motion and also filed a motion to dismiss the SAC under Rule 12(b)(5) for insufficient service of process.

Following full briefing by the parties, the Court, by order filed June 29, 2009, denied plaintiff's motion, finding defendants had neither waived nor evaded service. In particular, the Court found that the record developed by the parties showed plaintiff had failed to obtain and send to defendants the requisite waiver of service forms; defendants did not return waiver of service forms to plaintiff, and plaintiff, consequently, had not filed such forms with the Court in accordance with Rule 4(d)(4).

The Court also denied defendants' motion to dismiss the SAC for insufficient service of process, and determined that while plaintiff had not shown good cause for his failure to timely serve defendants, the Court would exercise its discretion to grant him one final

2

extension of time to do so. In that order, the Court explained in detail the requirements for perfecting service in accordance with Rule 4(d) and also informed plaintiff that, should defendants fail to waive service, plaintiff was required to timely serve them by other means, or his claims as to each unserved defendant would be subject to dismissal.[1] The Court further informed plaintiff that if he failed to provide the Court, by August 15, 2009, with proof that service had been accomplished, the SAC would be dismissed without prejudice as to all unserved defendants.

On August 12, 2009, three days before the above-referenced deadline, plaintiff filed a "Motion to Compel," in which plaintiff stated he was of the belief that correctional officials at Represa State Prison did not send out all of the envelopes plaintiff had prepared for the forty-six defendants, and by which he had requested such defendants waive service. According to plaintiff, the prison's outgoing mail log for plaintiff's July 2009 mail showed that only six envelopes had been sent out. Plaintiff stated he had filed an administrative appeal regarding the matter, but provided no information regarding any response thereto. Plaintiff also stated that when he realized only some of his service documents had been sent, he mailed the summonses and complaints to members of his family, with a request that they hire the United States Marshal to effectuate service subject to later reimbursement by the defendants or Represa State Prison. By way of his motion, plaintiff sought to compel mail room staff at Represa State Prison either to provide proof that all forty-six of the defendants were "properly served," which, according to plaintiff, meant that his requests for waiver of service had been sent to the defendants, or, alternatively, to tell plaintiff what happened to his requests for waiver of service.

No proof of service with respect to any defendant was filed by August 15, 2009. On August 24, 2009, however, a Waiver of Service of Summons form was filed by defendant Woodford.

---

[1] The Court, in granting plaintiff additional time to serve defendants under Rule 4(m), informed plaintiff that the Court was expressing no opinion as to the manner in which such service should be accomplished, but stressed to plaintiff that "service must be accomplished by the deadline set forth herein." (Order, filed June 29, 2009, at 7 n.6.)

3

1  The Court, by order filed October 2, 2009, denied plaintiff's motion to compel, ruling
2  as follows:

> At the outset, the Court notes that correctional officers at Represa State Prison are not defendants to this action and, consequently, are neither subject to the Court's jurisdiction nor legally obligated to appear in this matter. Additionally, there is no indication from plaintiff's motion that he has completed the administrative appeals process with respect to his request for information from Represa mail room staff. The preferred procedure for the resolution of any internal prison matter is through the administrative appeals process; consequently, plaintiff must first exhaust that avenue of relief before asking for court intervention. Further, as was explained to plaintiff in the Court's June 29, 2009 order, service on a defendant is deemed accomplished under Rule 4(d) only when a waiver of service form has been returned to the court. (Order at 3:8-10, 4:18-23.) Thus, even if Represa mail room staff did send the waiver of service forms as plaintiff requested, the Court, absent the return of the completed waiver of service forms, would not find defendants had been properly served. Finally, as also was explained to plaintiff in the Court's previous order, if plaintiff was of the belief that waiver of service would not be accomplished within the requisite period, he was responsible for ensuring defendants were timely served by other means. (Order at 3:14-16.)
>
> In sum, no waiver of service form or any other proof of service has been filed with respect to any defendant other than J. Woodford. Accordingly, more than seventeen months having elapsed since plaintiff was first ordered to serve all defendants, and the most recent service deadline of August 15, 2009 having passed, all defendants other than J. Woodford will be dismissed as defendants to this action.

(Order, filed Oct. 2, 2009, at 3:3-23.)

Thereafter, plaintiff twice moved for leave to file a motion for reconsideration of the Court's order. The Court granted plaintiff's second request to file such motion, based on plaintiff's assertion that he had succeeded in obtaining from Represa State Prison officials evidence demonstrating that not all of the forty-six envelopes delivered for mailing by plaintiff had been sent out.[2] In support thereof, plaintiff included a copy of a grievance he had filed on August 2, 2009, at the informal level of review at Represa State Prison, in which grievance he complained that "on or around" July 7, 2009, he handed forty-six envelopes to Correctional Officer Ray for mailing, but that the outgoing mail log for July 2009, a copy of which plaintiff received on July 31, 2009, showed only six envelopes were actually mailed.

---

[2] The Court granted the motion with respect to the forty defendants to whom plaintiff alleged the envelopes had never been sent. The Court denied reconsideration with respect to the five defendants to whom the envelopes undisputably had been sent but who had not returned signed waivers of service to plaintiff.

4

(Mot. Recon. (Docket No. 62) Ex. A at 4.) The grievance form submitted by plaintiff included a response to plaintiff from Correctional Officer Ray, in which Ray confirmed he had received all forty-six legal envelopes from plaintiff. Ray further stated he "processed [the envelopes] according to CSP-SAC legal mail process," and "placed all forty-six envelopes into the mail bag located in the B-Facility Watch Office." (Id.) By contrast, the outgoing mail log submitted by plaintiff, however, showed that only six envelopes had been mailed by prison officials; specifically: (1) on July 14, 2009, a total of three separate envelopes addressed to individuals at the office of the California Department of Corrections and Rehabilitation in Sacramento were sent, respectively, to the attention of defendants "J. Woodford (Director)," "M.H. Jensen (Appeals Examiner)," and "J.L. (Chief Inmate Appeals Branch)," and (2) on July 20, 2009, a total of three separate envelopes addressed to the Liaison Legal Coordinator at Pelican Bay State Prison were sent, respectively, to the attention of defendants "G. Griffith (CCH)," "R.G. Bleisner, et al. (Chaplain)," and "R. Kun (C/O)." (Docket No. 62 Ex. D at 3.)

The Court directed defendants' counsel to respond to the motion for reconsideration. In response, attorney Quinn, specially appearing, has filed a declaration in which he attests to the following:

> During the past two weeks, I have contacted officials at California State Prison, Sacramento [Represa State Prison] to obtain evidence that Plaintiff's envelopes requesting waivers of service were mailed to the forty defendants not listed on the outgoing mail log previously submitted to this Court. I have been informed that there is no other mail log that would have listed Plaintiff's outgoing legal mail. Aside from reviewing the mail log and speaking with individuals in the prison's mail room, I examined Plaintiff's trust account in order to determine if funds were withdrawn from the account to cover the cost of mailing forty envelopes. While funds were taken out of Plaintiff's account in July 2009 to pay for postage on legal mail, I do not believe the amount withdrawn could have covered the cost of mailing the forty envelopes in question. Accordingly, Defendant cannot presently provide this Court with evidence that those envelopes were mailed in July 2009.

(Decl. Michael J. Quinn Supp. Resp. Mot. Recons. ¶ 3.)

2. <u>Analysis</u>

As noted, the Court previously determined that the forty unserved defendants were subject to dismissal because no waiver of service form or any other proof of service had been

5

filed with respect to those defendants. Additionally, the Court found plaintiff's allegations that prison officials might not have mailed plaintiff's requests for waiver of service to those defendants did not impact the Court's decision because, as was explained to plaintiff in the Court's previous order, if plaintiff was of the belief that waiver of service would not be accomplished within the requisite period, he was responsible for ensuring defendants were timely served by other means, and he had not done so.

To date, plaintiff has had more than two years in which to serve the defendants in this action. Although Rule 4(m) permits this Court to grant extensions in the absence of good cause, plaintiff is not thereby entitled to yet another extension of time to perfect service unless he shows good cause for the delay. See Efaw v. Williams, 473 F.3d 1038, 1040-41 (9th Cir. 2007). At a minimum, "good cause" means excusable neglect. Boudette v. Barnett, 923 F.2d 754, 756 (9th Cir. 1991).

For the reasons set forth below, the Court finds the evidence presented in plaintiff's motion for reconsideration does not establish good cause for plaintiff's failure to timely serve the forty defendants remaining unserved, because plaintiff has not shown that (1) he had the funds to pay for the mailing of all forty-six envelopes, (2) prison officials were obligated to mail the envelopes if plaintiff lacked such funds, or (3) it was reasonable for plaintiff to assume the United States Marshal would serve the defendants subject to later reimbursement.

In support of his motion for reconsideration plaintiff has presented evidence that, on July 7, 2009, he handed forty-six envelopes to Correctional Officer Ray for processing, i.e., for Ray to seal and date as received, and deliver for mailing. The evidence further shows that Ray did so, by placing all forty-six envelopes in the mail bag located in the B-Facility Watch Office.[3] (Mot. Recon. Ex. A at 5.) Additionally, plaintiff's evidence shows that (1) according to the July 2009 mail log, three of plaintiff's envelopes were mailed on July 14, 2009 and three were mailed on July 20, 2009 (id. at 18); (2) on an undisclosed date, presumably prior to the date the six envelopes were mailed, prison officials "sent some of the

---

[3]Nowhere is it alleged, nor does the evidence show, that Ray was responsible for ensuring the envelopes ultimately were mailed.

6

1  six mailed manila envelopes back" to plaintiff for payment of the postage to cover the
2  mailing of those envelopes (id. at 24); and (3) three trust account withdrawal requests for
3  "Legal Postage – In re summons, etc. case # C 04-4903," which had been submitted by
4  plaintiff on July 7, 2009, were returned to plaintiff on July 15, 2009, with the notation "No
5  Funds in Trust Account" stamped on the front (id. 20-22).

6        The reasonable inference to be drawn from the above evidence is that all forty-six of
7  plaintiff's envelopes were delivered to the mail room for mailing, mail room staff informed
8  plaintiff he was required to withdraw funds from his trust account to cover the costs of
9  mailing, and plaintiff only had sufficient funds in his trust account to cover the cost of
10  mailing six envelopes.[4]

11        The record as a whole is consistent therewith. In particular, plaintiff submits no
12  evidence demonstrating he had sufficient funds to cover the requisite postage for all forty-six
13  mailings. Rather, in his prison grievance, submitted in support of the instant motion for
14  reconsideration, plaintiff argued that under California Code of Regulations ("CCR") § 3165,
15  prison officials were required to mail out all of plaintiff's envelopes, whether plaintiff had
16  funds in his trust account to cover the postage or not. That regulation, titled "Mailing Legal
17  Documents," provides that postage for "legal documents" submitted for mailing is to be
18  charged to the inmate's trust account unless the inmate is, at that time, "indigent." See CCR
19  § 3165(d).

20        The language of the regulation, however, does not support plaintiff's contention that
21  prison officials were required to mail all of his envelopes to the defendants herein. In
22  particular, although plaintiff appears to contend his requests for waiver of service qualify as

---

[4] Such finding is further supported by attorney Quinn's declaration that when he examined plaintiff's trust account in order to determine if funds were withdrawn from the account to cover the cost of mailing the additional forty envelopes, he discovered that funds had been taken out of plaintiff's account in July 2009 to pay for postage on legal mail, but that, in Quinn's assessment, the amount withdrawn could not have covered the cost of mailing those envelopes. (See Quinn Decl., filed Feb. 23, 2010.) Because Quinn has not articulated, let alone provided documentation of, the specific amounts withdrawn, however, the Court, in drawing the above-referenced inference, has not relied on Quinn's declaration in the first instance.

7

"legal documents" under CCR § 3165, that regulation, by its terms, applies to the mailing of "legal documents <u>to courts</u>" and "claims <u>to the Board of Control</u>." CCR § 3165(a) (emphasis added). There is nothing in the regulation to support the proposition that mail sent to parties is covered under CCR § 3165. Thus, irrespective of whether plaintiff was able to pay for the costs of mailing all forty-six envelopes, mail room staff would have been under no obligation to mail the envelopes for him.

Moreover, even if CCR § 3165 were deemed to apply to documents sent to parties, there is no evidence to suggest plaintiff would have qualified thereunder as indigent, because, as noted above, he apparently had sufficient funds in his account to pay for the mailing of six of the envelopes. Specifically, under CCR § 3165, "indigent" is defined by reference to CCR § 3162(a), which, in turn, defines "indigent inmate" as an "inmate who currently has <u>and for the previous 30 consecutive days has maintained</u> $1.00 or less in his or her inmate trust account." <u>See</u> CCR § 3165(d); CCR § 3162(a) (emphasis added). Consequently, plaintiff's ability to pay the costs of mailing the six envelopes that were sent out on July 14, 2009 and July 20, 2009 would have disqualified him as an "indigent inmate" until such time as thirty consecutive days had passed from the time his account was depleted thereby, and assuming no significant deposits thereafter.

As plaintiff has shown neither that he had the ability to pay for postage to cover the costs of mailing all of the envelopes nor that prison regulations required mail room staff to mail the envelopes for him if he did not have such funds, the Court finds plaintiff has failed to show the failure of prison officials to mail all forty-six envelopes establishes good cause for an extension of time to serve the unserved defendants.

Nor has plaintiff otherwise demonstrated good cause for such further extension. In particular, plaintiff has not shown he made reasonable efforts to ensure that all defendants would be served by August 15, 2009, the extended deadline granted by the Court. As an initial matter, once plaintiff learned, on July 15, 2009, that he did not have funds in his account to cover postage for mailing all of the requests for waivers of service, it was not reasonable for him to assume that all of his requests for waiver of service would be mailed

8

out. Further, once plaintiff received the mail log on July 31, 2009, and thereby learned that requests for waiver of service had not been mailed to forty of the defendants, it was not reasonable for him to assume that any of those defendants would waive service by the August 15 deadline.[5] Lastly, plaintiff's belated attempt on August 2, 2009, to serve, rather than obtain waivers from, the defendants was not reasonably calculated to effectuate service. In particular, plaintiff's mailing of service materials to his family with directions that his family ask the United States Marshal to accomplish service, subject to the Marshal later being reimbursed by the defendants or Represa State Prison officials, cannot be deemed reasonable, as plaintiff had neither legal authority nor any other reason to believe that the Marshal would serve the defendants under such circumstances.

In sum, plaintiff named and then elected to seek waivers of service from, rather than to serve, an exceptionally large number of defendants to the instant action and has been afforded numerous opportunities over a protracted period of time to either obtain the requisite waiver or otherwise satisfy the requirements for service of process on all defendants against whom he seeks to proceed. To the extent plaintiff has not accomplished such service, plaintiff has failed to show good cause for a further extension of time to do so, and, accordingly, plaintiff is not entitled to a further extension under Rule 4(m).

Lastly, the Court declines to grant plaintiff what would be a second permissive extension of time to serve the defendants. Specifically, in its June 29, 2009 order denying defendants' motion to dismiss the complaint for insufficient service of process, the Court found that plaintiff had not shown good cause for his failure to serve the defendants, but exercised its discretion to grant plaintiff one final extension of time to accomplish service. Now, approximately ten months after the August 15, 2009 deadline set by the Court for plaintiff to do so, defendants still have not been served, and the Court concludes it is time the matter of service be put to rest. In particular, approximately five and one-half years have

---

[5] Indeed, once plaintiff was aware that only one of the six defendants to whom waivers of service were mailed actually elected to waive service, plaintiff had no reason to assume that any of the remaining defendants would do so in the time allowed or otherwise.

9

passed since the instant action was filed, defendants are being asked to defend against claims that arose as early as 2003, i.e., seven years ago and no more recently than 2005, i.e., five years ago; more than two years have passed since the Court first required plaintiff to show good cause for his failure to timely serve the defendants, plaintiff has been granted numerous extensions of time since then to perfect service, and there is no indication that plaintiff either can successfully serve the forty defendants or do so without further significant delay. Accordingly, the Court will not grant any further permissive extensions of time to serve the defendants.

Accordingly, plaintiff's motion for reconsideration of the Court's dismissal of the unserved defendants will be denied, and no further motions for reconsideration with respect to such matter will be considered by the Court.

B.  <u>Defendant's Motion to Stay Discovery and Plaintiff's Discovery-Related Motions</u>

The background relevant to the parties' discovery-related motions is as follows:

On November 12, 2009, defendant Woodford filed a motion for summary judgment.

In January 2010, Woodford received from plaintiff requests for production of documents, interrogatories, and requests for admission. (Mot. Stay at 1:19-21.)

On February 19, 2010, plaintiff filed a motion by which he asked the Court to instruct him on how to proceed in view of the fact that Woodford had not, as of that date, responded to his discovery requests; additionally, based on such asserted inability to obtain discovery, plaintiff asked that summary judgment not be granted to Woodford and that counsel be appointed to assist plaintiff with his discovery endeavors.

Thereafter, on February 24, 2010, Woodford responded to plaintiff's request for production of documents by denying all of plaintiff's requests (Pl.'s Resp. Mot. Stay ¶ 3); Woodford did not respond to plaintiff's interrogatories and requests for admission (<u>id.</u> ¶ 5).

On February 26, 2010, Woodford filed the instant motion, seeking a stay of all discovery pending a ruling on his motion for summary judgment. Woodford argues a stay is warranted because none of the discovery requests that plaintiff has propounded relates to the single issue raised in the motion for summary judgment, namely, given the facts pertaining in

10

1 the instant case, whether Woodford, then Director of the California Department of
2 Corrections and Rehabilitation, should be held liable as a supervisor under 42 U.S.C. § 1983.
3 Woodford maintains it would be unduly burdensome for her to respond to discovery if the
4 Court thereafter were to determine plaintiff's claims cannot be pursued.

5 On March 8, plaintiff filed a response to Woodford's request for a stay. Plaintiff
6 argues therein that he should be allowed to proceed with discovery to obtain evidence
7 relevant to several of his claims by which he alleges Woodford had direct knowledge of
8 constitutional violations perpetrated against plaintiff; additionally, plaintiff again seeks an
9 order denying summary judgment on discovery grounds.

10 Generally, parties may obtain discovery regarding any matter, not privileged, that is
11 "relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant
12 information need not be admissible at trial if the discovery appears reasonably calculated to
13 lead to the discovery of admissible evidence." Id. Based on the above facts, the Court finds
14 plaintiff is entitled to engage in discovery. Consequently, Woodford's motion to stay
15 discovery will be denied, and the Court will deny as moot plaintiff's motion to deny
16 summary judgment on discovery grounds. Lastly, plaintiff's motion for appointment of
17 counsel will be denied; it is clear from the proceedings in this matter that plaintiff adequately
18 understands and can participate in the discovery process. See Rand v. Rowland, 113 F.3d
19 1520, 1525 (9th Cir. 1997) (holding court properly denied request for counsel where
20 plaintiff's pursuit of discovery was comprehensive and focused, and papers generally were
21 articulate and organized).

22 In order to expedite discovery and ensure that a ruling on the motion for summary
23 judgment is not unduly delayed, the parties shall comply with the discovery and briefing
24 schedule set forth below.
25 ///
26 ///
27 ///
28

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's motion for reconsideration is hereby DENIED.

2. Defendant Woodford's motion to stay discovery is hereby DENIED.

3. Plaintiff's discovery-related motions are hereby DENIED.

4. The parties shall comply with the following discovery and briefing schedule:

    a. All discovery requests must be served no later than **twenty** days from the date this order is filed; no party may seek discovery after that date.

    b. All discovery responses, including defendant Woodford's responses to plaintiff's pending discovery requests, shall be served no later than **thirty** days from the date this order is filed.

    c. Any motion to compel discovery shall be filed no later than **forty-five** days from the date this order is filed. The parties are advised that no motion to compel discovery will be considered by the Court unless the meet-and-confer requirements of Federal Rule of Civil Procedure 37(a)(2)(B) and Local Rule 37-1 have been satisfied. Because plaintiff is incarcerated, the parties may satisfy the meet-and-confer requirements by way of written communication.

    d. Plaintiff shall file his opposition to defendant Woodford's motion for summary judgment no later than **sixty** days from the date this order is filed.

    e. Defendant Woodford <u>shall</u> file a reply no later than **fifteen** days from the date the opposition is filed.

This order terminates Docket Nos. 64, 67, and 72.

IT IS SO ORDERED.

DATED: June 10, 2010

MAXINE M. CHESNEY
United States District Judge