**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUWAKKIL AL-HIZBULLAHI, a.k.a. TIM TYSON,<br><br>    Plaintiff,<br><br>  v.<br><br>R.G. BLEISNER, et al.,<br><br>    Defendants.<br>_____ | No. C 04-4903 MMC (PR)<br><br>**ORDER GRANTING DEFENDANT WOODFORD'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>**(Docket Nos. 56, 77)** |

On November 11, 2004, plaintiff, a California prisoner then incarcerated at Pelican Bay State Prison ("PBSP")[1] and proceeding pro se, filed the above-titled civil rights action pursuant to 42 U.S.C. § 1983. Now pending before the Court is the motion for summary judgment filed by Jean Woodford, the only defendant to have been successfully served in this action. Plaintiff has opposed the motion and Woodford has filed a reply. Also pending is plaintiff's motion to compel discovery.

**BACKGROUND**

A.     Procedural Background

By his SAC, plaintiff sought to assert seven claims for relief against fifty-six

---

[1] Plaintiff currently is incarcerated at Represa State Prison.

defendants for events that occurred when plaintiff was incarcerated at PBSP from 2001 through mid-2005, and from 2005 forward at Represa State Prison, where plaintiff currently resides.

Upon reviewing the SAC, the Court determined that plaintiff stated seven cognizable claims for relief against PBSP defendants and certain officials of the California Department of Corrections and Rehabilitation ("CDCR"). Additionally, the Court dismissed as moot plaintiff's claims for injunctive relief with respect to the conditions of his confinement at PBSP, as plaintiff no longer was incarcerated at PBSP. The Court also dismissed all of plaintiff's claims against prison officials at Represa State Prison, as the proper venue for such claims is in the Eastern District of California. See 28 U.S.C. § 84(b). Those claims were dismissed without prejudice to plaintiff's raising them in a separate complaint filed in the Eastern District.

By that same order, the Court ordered plaintiff, who is not proceeding in forma pauperis and has paid the filing fee in this matter, to effectuate service on the PBSP and CDCR defendants against whom plaintiff had stated cognizable claims for relief. More than two years after the Court's order, plaintiff, after having been granted numerous extensions of time to effectuate service, had not successfully served any defendant other than defendant Woodford. Consequently, the Court dismissed all unserved defendants pursuant to Rule 4(m) of the Federal Rules of Civil Procedure and directed Woodford to file a motion for summary judgment or other dispositive motion.

B.   Plaintiff's Undisputed Facts[2]

As noted, the cognizable claims against the PBSP and CDCR defendants arise from

---

[2]The following facts are undisputed for purposes of the instant motion and are derived from plaintiff's verified SAC. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (holding verified complaint may be used as opposing affidavit under Rule 56 if based on personal knowledge and sets forth specific facts admissible in evidence). Plaintiff did not submit any exhibits in support of the SAC, but did submit exhibits in support of his original complaint. As plaintiff is proceeding pro se, and thus might not have been able to obtain copies of the documents attached to the original complaint to submit with the SAC, the Court, for purposes of the instant order, also considers as plaintiff's evidence the exhibits attached to the original complaint.

2

events that occurred from 2001 through mid-2005, while plaintiff was incarcerated at PBSP. In support of his claims, plaintiff submits the following evidence:

Between February 2001 and November 2003, plaintiff filed many administrative appeals, but the appeals either were not processed or were denied. Additionally, in 2002 and 2003, plaintiff had legal mail returned to him because plaintiff had used his legally changed religious name when sending the mail. In April and November 2003, plaintiff's state habeas petitions challenging these actions were denied for failure to exhaust administrative remedies. (SAC at 40 ¶¶ 262-263.)

In 2001, PBSP prison officials would not allow plaintiff to use his legally changed religious name, even though he had done so previously. Plaintiff's administrative appeals of the matter were denied. (SAC at 38 ¶ 245 - 40 ¶ 260.)

In 2002, PBSP Warden McGrath banned plaintiff from receiving any mail that included the Swahili language, and prison officials denied plaintiff's administrative appeals of the ban. (SAC at 43 ¶ 291 - 44 ¶ 300.)

In January 2003, plaintiff was found guilty of a rules violation report ("RVR") charging him with mutual combat. Subsequently, after plaintiff challenged that finding, he was charged with and found guilty, in June 2003, of an RVR for making false allegations against a staff member, and as a result had sixty days of time credits forfeited. All of plaintiff's administrative appeals challenging the second RVR and consequent credit forfeiture were denied. (SAC at 34 ¶ 207 - 36 ¶ 227.)

From July 14, 2003 to November 10, 2003, plaintiff was held in administrative segregation while being investigated for possible involvement in an inmate conspiracy to assault or murder PBSP staff. After being charged with an RVR for his alleged actions, plaintiff, on November 10, 2003, was found guilty of the charges and sentenced to a determinate term of twelve months in administrative segregation. Through March 29, 2004, plaintiff, while serving that term, received at most two hours per week of exercise. All of plaintiff's administrative appeals challenging the decisions to confine him in administrative segregation and the denial of exercise were denied. (SAC at 12 ¶ 68 - 18 ¶ 97, 32 ¶ 193 - 33

3

¶ 203.)

Plaintiff was sentenced to serve an indeterminate sentence in the Secured Housing Unit ("SHU") after his determinate term expired. He was held in the SHU from March 29, 2004 through June 16, 2005. Such placement negatively affected plaintiff's ability to participate in certain programs required for plaintiff to become eligible for parole. All of plaintiff's administrative appeals challenging his SHU placement were denied. (SAC at 21 ¶ 110 - 23 ¶ 129.)

Plaintiff was released from the SHU on June 16, 2005, after which he was transferred to Represa State Prison. (SAC at 10 ¶ 59.)

C.  Defendant Woodford's Undisputed Facts

Between February 1999 and February 2004, defendant Woodford was the warden at San Quentin State Prison ("SQSP"), and during that time "had no involvement in the daily operations of [PBSP]." (Decl. J. Woodford Supp. Mot. Summ. J. ("Woodford Decl.") ¶¶ 2, 4.)

Between February 2004 and July 2005, Woodford served as the Director of CDCR and thereafter served as CDCR's Acting Secretary through April 2006; during that time Woodford "had no involvement in the daily operations of [PBSP]." (Id. ¶ 4, Def.'s Resp. to Pl.'s First Set of Interrogs., Interrog. No. 2.)[3]

**DISCUSSION**

A.  Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable

---

[3] Woodford does not explain the distinction, if any, between her roles as CDCR's Director and CDCR's Acting Secretary.

4

jury could return a verdict for the nonmoving party.  See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B.   Plaintiff's Motion to Compel Discovery

Plaintiff claims defendant Woodford, in her capacity as Director of CDCR, is liable, through her direct actions or as a policy-maker, for condoning and/or failing to put a stop to the violation of plaintiff's constitutional rights by prison officials at PBSP.  Woodford moves for summary judgment on the ground there is no evidence she was involved in any capacity

5

in the alleged constitutional violations suffered by plaintiff.

Together with his opposition to the instant motion for summary judgment, plaintiff has filed a motion to compel discovery, which discovery, plaintiff maintains, he requires in order to produce evidence that raises a triable issue of fact with respect to his claims against defendant Woodford. In particular, plaintiff served Woodford with seventeen requests for production of documents, twenty-one requests for admissions, and twenty-one interrogatories. Woodford objected to the majority of plaintiff's discovery requests on the grounds the requests are vague, ambiguous and unintelligible, overly broad, unduly burdensome and oppressive, seek information that is irrelevant and not calculated to lead to the discovery of admissible evidence, and, in some instances, seek privileged information. (See Pl.'s Mot. to Compel, Ex. B.)

The Court has reviewed plaintiff's discovery requests and the objections thereto. Based on the claims raised in the SAC, the evidence submitted by plaintiff in support thereof, and defendant Woodford's evidence, the Court concludes that none of the information plaintiff seeks to compel could elicit evidence that would raise genuine issues of material fact as to whether Woodford, either directly or as a policy-maker, participated in, or knew of and failed to intervene in, the violation of plaintiff's constitutional rights. See Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988). Consequently, plaintiff's motion to compel will be denied, and the Court will not defer ruling on the motion for summary judgment. As discussed below, summary judgment will be granted in favor of defendant Woodford.

C.   Supervisory Liability

"It has long been clearly established that '[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" Preschooler II v. Davis, 479 F.3d 1175, 1183 (9th Cir. 2007) (internal citation omitted). Consequently, a supervisor may be held liable under 42 U.S.C. § 1983 only upon a showing of personal involvement in a constitutional

6

deprivation, or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted); see Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them").

Under no circumstances is there respondeat superior liability under 42 U.S.C. § 1983; specifically, under no circumstances is there liability under § 1983 solely because one is responsible for the actions or omissions of another. See Taylor, 880 F.2d at 1045. "In a § 1983 or a Bivens action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

D. Plaintiff's Claims

   1. Placement and Retention in Administrative Segregation

The first claim in the SAC is that plaintiff was unlawfully held in administrative segregation, in violation of due process, while he was being investigated for, and was eventually found guilty of, an RVR charging him with conspiracy to murder and/or assault correctional staff.

According to plaintiff's evidence, plaintiff was placed in administrative segregation for investigation on July 14, 2003, he was found guilty of the RVR on November 10, 2003, his subsequently-filed administrative appeal contesting the decision was screened out by PBSP officials on January 28, 2004, and the PBSP warden subsequently refused to intervene. (SAC at 17-18 ¶¶ 81-93.) Additionally, plaintiff's evidence shows that on February 1, 2004, plaintiff wrote to defendant Woodford, in her capacity as Director of CDCR, a letter regarding the above-described actions of PBSP prison officials (Opp'n 7:12-16 & Ex. B), and that Woodford did not respond to the letter; rather, on March 9, 2004, "J.L." of the inmate appeals branch of CDCR responded to the letter, refusing to intervene (SAC 18 at ¶¶ 94-95).

The Court finds plaintiff has not presented evidence that shows defendant Woodford either was involved in, or wrongfully failed to remedy, the violation of plaintiff's constitutional rights as argued above.  First, as set forth above, the evidence is undisputed that at the time plaintiff was charged with the RVR, placed in administrative segregation, and found guilty of the RVR, all of which events occurred in 2003, Woodford was the warden at SQSP and had no knowledge of plaintiff or his situation.  Further, although plaintiff, on February 1, 2004, wrote a letter to Woodford in her capacity as Director of CDCR, complaining about the above, plaintiff has not produced evidence that shows Woodford knew of and reviewed the letter or, if she did, that she had any administrative obligation to respond to it on the merits.  In particular, CDCR regulations expressly require an inmate who desires director's-level review of a complaint to file a timely administrative appeal after first exhausting prior levels of administrative review.  See 15 Cal. Code Regs. §§ 3084.5(d); 3084.6 (c).  Here, however, plaintiff sent a letter directly to the CDCR Director, rather than follow proper administrative procedures.  Consequently, in the absence of any evidence to the contrary, the record submitted herein supports an uncontroverted reasonable inference, specifically, that plaintiff's appeal was not investigated at the director's level because it was not presented in accordance with proper procedure.  Indeed, plaintiff's own evidence, submitted by plaintiff with his original complaint, makes that point directly.  Specifically, plaintiff has submitted a copy of J.L.'s March 9, 2004 rejection of plaintiff's letter, in which J.L. expressly informed plaintiff that his letter was being returned to him because plaintiff, by failing to complete all levels of administrative review prior to submitting a director's-level appeal, had not followed proper administrative procedures.  (Compl. Ex. D at 2.)

Based on the above, the Court concludes plaintiff has failed to raise a triable issue as to whether Woodford either was personally involved in plaintiff's alleged unlawful placement and retention in administrative segregation, or that she directed, or knew of and wrongfully failed to prevent, such actions.  Accordingly, summary judgment will be granted in favor of Woodford on this claim.

####           2.     Placement and Retention in the SHU

Plaintiff's second claim is that he was unlawfully retained in the SHU on an indeterminate basis after being found guilty of the RVR, that he was so confined through June 16, 2005, and that administrative appeals of the indeterminate sentence were denied. (SAC at 21 ¶ 110 - 24 ¶ 131.)

Plaintiff's evidence shows the following: On February 4, 2004, plaintiff was sentenced for the above-referenced RVR to a twelve-month determinate term in the SHU, and it was recommended at such time that plaintiff be endorsed for an indeterminate SHU term after his determinate term expired. That same date, plaintiff wrote a letter to the Director's Review Board ("DRB"), claiming he was being held unlawfully in administrative segregation based on the RVR, and also that there were no grounds to hold him in the SHU on an indeterminate basis. (Opp'n at 7:17-20 & Ex. B.) On March 15, 2004, Facility Captain Williams responded on behalf of the DRB, refusing to intervene. (SAC at 18, ¶¶ 94-97.) Meanwhile, on February 25, 2004, plaintiff filed an administrative appeal challenging the indeterminate SHU term, which appeal was denied by T. Surges on July 6, 2004, at the director's level of review. (SAC at 22 ¶¶ 112-115.)

Additionally, plaintiff presents evidence that the policy allowing for plaintiff's endorsement for an indeterminate term after his determinate term had expired was originally set forth in a CDCR memorandum, dated August 26, 2002 and directed to all wardens, which memorandum authorized such indeterminate placement in the SHU for reasons of safety and security. (SAC at 21 ¶ 110, Opp'n at 7 & Ex. A.) Plaintiff contends the policy was unlawful, that Woodford was aware of the policy because she would have received the above memorandum in 2002 when she was the warden of SQSP, and that she was made aware of plaintiff's unlawful SHU confinement by way of plaintiff's February 2004 letters to Woodford and the DRB.

Plaintiff's contention that the evidence shows Woodford knew about and failed to prevent plaintiff's alleged unlawful indeterminate confinement in the SHU is not supported by the record herein. First, as noted above, plaintiff has presented no evidence that shows

9

Woodford either knew of or wrongfully failed to respond to the letter sent to her by plaintiff on February 1, 2004, as said letter was not presented to Woodford in accordance with proper procedure.

Second, plaintiff has not presented evidence that Woodford was a member of the entity identified as the DRB, to which plaintiff sent his February 4, 2004 letter objecting to the indeterminate term. That letter, which, as noted, was not addressed to Woodford, was answered by Facility Captain Williams, who refused to intervene. Further, even if Woodford was a member of the DRB, plaintiff has presented no evidence that the DRB was the proper authority to review his claims of unlawful SHU confinement or that the correct procedure for communicating with the DRB was through a letter, rather than an administrative appeal. Indeed, plaintiff's evidence is to the contrary. In particular, in support of his original complaint, plaintiff submitted a copy of Williams' March 15, 2004 response, in which Williams expressly informed plaintiff that plaintiff's letter was being returned to him for failure to follow proper administrative procedures, because classification issues can be referred to the DRB only by a department head or from decisions made at the director's level. (Compl. Ex. D at 12.)

Additionally, at the time plaintiff wrote the DRB, no official action had been taken. Plaintiff wrote his letter to the DRB on February 4, 2004, and the undisputed evidence shows that on that date plaintiff had not yet been endorsed by the classification committee to serve an indeterminate SHU term. Rather, plaintiff wrote in his letter only that "PBSP <u>has recommended</u> for petitioner to receive an indeterminate SHU term." (Opp'n Ex. C at 4) (emphasis added).

Similarly, plaintiff's subsequent administrative appeal, which was denied by T. Sturges at the director's-level on July 6, 2004, did not properly present for review the question of the lawfulness of his indeterminate SHU term. In that appeal, plaintiff claimed, with respect to the indeterminate SHU term, that the classification committee had not considered mitigating factors, that he had not been provided with an updated segregated housing order, and that he had not been provided the opportunity to present witnesses and

other evidence on his behalf. (Compl. "Statement of Claim II – Set 1 – Director's Level Appeal Decision.") Plaintiff's evidence, however, shows that the appeal was premature. Specifically, in response to the appeal, T. Sturges informed plaintiff that although the classification committee had recommended that plaintiff serve an indeterminate SHU term, plaintiff was still serving his determinate term and, once his determinate term expired, he would be issued a new SHU order concerning the indeterminate term and be provided "all the procedural safeguards and due process." (Id.)

Plaintiff further asserts that after his determinate term ended, he filed, on February 10 and February 20, 2005, respectively, two additional administrative appeals with PBSP officials, challenging the use by the classification committee of plaintiff's possession of "militant literature" as a basis for sentencing him to the indeterminate SHU term. (SAC at 23 ¶ 120.) Plaintiff states the appeals were denied at all levels of review, but does not state the grounds for those denials. With respect to the denial of his appeal at the director's level of review, for example, plaintiff states: "On Sept. 07, 2005, Defendant T. Sturges denied said 602." (SAC at 23 ¶ 129.) Nor has plaintiff submitted any documentary evidence from which the grounds for denial can be inferred.[4] Consequently, the Court finds plaintiff has not designated "specific facts showing that there is a genuine issue for trial," see Celotex, 477 U.S. at 324, as to the issue of whether the denial of plaintiff's director's-level appeal implicates Woodford in the denial of plaintiff's constitutional rights.

Based on the above, the Court concludes plaintiff has failed to raise a triable issue with respect to whether Woodford was involved in any capacity in plaintiff's placement and retention in the SHU for an indeterminate term. Accordingly, summary judgment will be granted in favor of Woodford on this claim.

3. Denial of Access to the Courts

In his third claim, plaintiff contends that from April 2001 through November 2003,

---

[4] Nowhere does plaintiff provide a reason why he has not submitted the September 7, 2005 director's-level response, either as an exhibit to his original complaint or the SAC, or in support of his opposition. Notably, plaintiff does not request such document in his motion to compel, and, presumably, it is a document that could be found in plaintiff's own prison file.

11

1 prison officials at PBSP unlawfully denied him access to the courts.

2 Plaintiff has failed to present any evidence that Woodford either was directly involved
3 in or knew of and failed to prevent the unlawful actions of any PBSP prison official with
4 respect to such events. As noted, it is undisputed that Woodford did not become the director
5 of CDCR until February 2004, and that she was not involved in the daily operations of PBSP
6 during the preceding period. Consequently, there is no evidence to support the proposition
7 that Woodford either knew of or otherwise was involved in any of the events that took place
8 between April 2001 and November 2003.

9 Plaintiff further claims that Woodford subsequently was made aware of and failed to
10 take remedial action with respect to the noted events at PBSP when, following plaintiff's
11 transfer to Represa State Prison in 2005, plaintiff filed an administrative appeal concerning
12 his inability to send and receive legal mail using his legally changed religious name and
13 Woodford thereafter denied the appeal at the director's level of review. Plaintiff makes the
14 same argument in support of his claim that Woodford knew of and failed to act to remedy the
15 underlying problem of prison officials' refusal to allow plaintiff to use his legally changed
16 name. (See infra, Section 6.) For the reasons discussed hereafter (see id.), the Court
17 concludes plaintiff's appeal was not properly presented to Woodford for review.
18 Consequently, there is no evidence to support the proposition that Woodford either knew of
19 or failed to act properly to remedy the alleged denial of plaintiff's access to the courts.

20 Based on the above, summary judgment will be granted in favor of Woodford on this
21 claim.

22     4.    <u>Denial of Outdoor Exercise</u>

23 In his fourth claim, plaintiff maintains that during the period of his confinement in
24 administrative segregation from July 14, 2003 through March 29, 2004, he received
25 inadequate exercise, in violation of the Eighth Amendment.

26 In support of his claim that Woodford was involved in or knew of and failed to
27 prevent the violation of plaintiff's constitutional rights in such regard, plaintiff states that the
28 last administrative appeal he filed with PBSP officials concerning the denial of exercise was

12

denied at the director's level by an unnamed official on an unspecified date; as set forth in the SAC, plaintiff states: "On ____, Defendant ____ denied 602 at the Director's Level." (SAC at 32 ¶ 199.) Plaintiff then makes the conclusory assertion that "Director/Defendant Woodford refused to intervene in contravention to CDCR policy." (Id. ¶ 200.)

Plaintiff's evidence is insufficient to raise a triable issue with respect to whether Woodford knew plaintiff was being denied constitutionally adequate exercise and failed to intervene. In particular, in California state prisons, the deadline for filing an administrative grievance is fifteen working days from the date of the administrative decision of which the inmate complains. See 15 Cal. Code Regs. § 3084.6(c); Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008). Consequently, plaintiff would have been required to file his director's-level appeal within fifteen days of the October 20, 2003 denial of his final PBSP appeal. Because, however, Woodford did not become Director of CDCR until February 2004, more than three months after the denial of the final PBSP appeal, the evidence does not support an inference that Woodford reviewed and denied plaintiff's appeal. Indeed, plaintiff's evidence, submitted with his original complaint, shows that his appeal was denied at the director's level of review by T. Surges on January 7, 2004, approximately one month before Woodford became Director of CDCR. (Compl. "Statement of Claim IV – Set 1" at 1.) Based on the above, the Court concludes Woodford is entitled to summary judgment on this claim.

     5.     <u>Mutual Combat RVR and Violation of Time Credits</u>

In his fifth claim, plaintiff claims his rights to due process and to petition for redress of grievances were violated when (1) he was wrongly found guilty, on January 12, 2003, of an RVR for mutual combat with his cellmate and, (2) subsequently, after filing an appeal claiming the correctional officers involved in the incident had used excessive force, he was found guilty, on July 4, 2003, of making false allegations against a staff member, and had sixty days of time credits forfeited as a result. All of plaintiff's administrative appeals challenging the RVR and credit forfeiture were denied. (SAC at 34 ¶ 207 - 36 ¶ 227.)

In support of his assertion that defendant Woodford was involved in or knew of and failed to correct the above violations, plaintiff submits evidence that, after his appeal

13

claiming the use of excessive force was denied by PBSP officials on June 23, 2003, plaintiff wrote to Woodford on June 24, 2003. (SAC at 35 ¶ 220.)

It is undisputed, however, that on the date plaintiff wrote to Woodford she was still the warden at SQSP. (Woodford Decl. ¶ 2.) Consequently, even if an inference could be drawn that Woodford received plaintiff's letter, plaintiff has produced no evidence that shows she had any statutory or administrative obligation to respond.

As plaintiff has failed to raise a triable issue with respect to Woodford's liability, summary judgment will be granted in favor of Woodford on this claim.

### 6. Refusal to Recognize Legal Name Change

In his sixth claim, plaintiff maintains he was denied his rights under the First Amendment and to equal protection because prison officials would not allow him to use his legally changed religious name.

In support of his claim, plaintiff submits the following evidence: Starting in January 2001, officials at PBSP refused to allow plaintiff to send and receive mail using his legally changed religious name, even though they had previously allowed him to do so. Plaintiff filed administrative appeals at PBSP in 2001, all of which were denied. (SAC at 37 ¶ 234 - 40 ¶ 258.) Additionally, in August 2001, plaintiff filed an appeal at the director's level of review, which appeal was denied. (SAC at 40 ¶ 259.) Plaintiff then filed a state habeas corpus petition raising his claims; on November 25, 2003, the petition was denied by the California Supreme Court, for failure to exhaust administrative remedies. (Id. ¶¶ 262-263.) Thereafter, following plaintiff's transfer to Represa State Prison in mid-2005, plaintiff filed a new round of administrative appeals concerning the use of his legally changed name. Prison officials, however, refused to process the appeals. (SAC at 40 ¶ 264 - 41 ¶ 275.) On June 26, 2006, plaintiff sent to defendant Woodford, for director's-level review, two administrative appeals, one concerning the use of his legally changed name and one concerning the failure of Represa State Prison officials to process his appeals. On August 24, 2006, Woodford denied the appeals. (SAC at 40 ¶¶ 276-277.)

As discussed below, the Court finds plaintiff's evidence fails to raise a triable issue

with respect to whether Woodford knew of or wrongfully failed to intervene in the violation of plaintiff's constitutional rights by PBSP officials concerning the use of plaintiff's legally changed name. Plaintiff's evidence, as noted, shows that the only director's-level appeal filed by plaintiff in such regard was filed in August 2001, more than two years before Woodford became Director of CDCR. The director's-level appeals that plaintiff filed with Woodford were filed in June 2006, one year after plaintiff had been transferred from PBSP to Represa State Prison and, as alleged by plaintiff in the SAC, concerned complaints made by plaintiff to Represa State Prison officials and their failure to respond thereto. Further, plaintiff's evidence shows that prison officials at Represa State Prison refused to process plaintiff's appeals, specifically, the appeals were screened out, and that Woodford subsequently refused to intervene. CDCR regulations governing the processing of inmate appeals provide that appeals that do not meet certain procedural requirements may be screened out, i.e., rejected on procedural grounds. Consequently, in the absence of any evidence to the contrary, plaintiff's evidence gives rise to an uncontroverted inference that his appeals were not reviewed by Woodford on the merits. See Cal. Code Regs., tit. 15, § 3084.3(a), (c) (providing all appeals must be screened prior to acceptance for review and may by rejected on procedural grounds). In sum, there is no evidence to support the proposition that Woodford either knew of or wrongfully failed to act to remedy any constitutional violations by PBSP or Represa State Prison officials in connection with plaintiff's use of his legally changed name.

Accordingly, summary judgment will be granted in favor of Woodford on this claim.

7. <u>Denial of Access to Mail</u>

In his seventh claim, plaintiff claims that his First Amendment rights were violated when PBSP Warden McGrath banned plaintiff from receiving any mail that included the Swahili language, and prison officials denied plaintiff's administrative appeals of the ban.

In support of his claim, plaintiff submits evidence that, in June 2002, he was denied access to mail written in Swahili, that all of his administrative appeals were denied by PBSP prison officials, and, that, on November 21, 2002, his appeal was denied at the director's

level of review.  (SAC at 43 ¶ 291 - 44 ¶ 300.)

As it is undisputed that defendant Woodford did not become the Director of CDCR until February 2004, there is no evidence to support a finding of liability against Woodford, and, accordingly, summary judgment will be granted in favor of Woodford on this claim.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel discovery is hereby DENIED, and defendant Woodford's motion for summary judgment is hereby GRANTED on all claims.

The Clerk shall enter judgment in favor of defendant Woodford and close the file.

This order terminates Docket Nos. 56 and 77.

IT IS SO ORDERED.

DATED: September 8, 2010

_____
MAXINE M. CHESNEY
United States District Judge